CENTRAL SURETY AND INSURANCE CORPORATION, Plaintiff, *v.* DOMINICK MARRO, Doing Business as D. M. TRANSPORTATION, Defendant.

Supreme Court, Trial Term, Rensselaer County, July 23, 1947.

824

[redacted]

*James J. Carroll* for plaintiff.

*Joseph E. Walsh* for defendant.

Bookstein, J. Plaintiff insurance company brings this action against its insured to recover insurance premiums in the sum of $1,266.88. That that amount is its earned premium is not disputed.

Defendant has pleaded payment in the sum of $963.19 and concedes that plaintiff is entitled to recover only the balance, to wit, $303.69.

Plaintiff contends that no payments have been made to it and that it is entitled to recover the full sum of $1,266.88.

Plaintiff is an insurance company. Great Northern Associates, Inc. (hereinafter called " Northern ") is a general agent of plaintiff in Albany, New York. Harry P. Oelsen Company, Inc. (hereinafter called " Oelsen ") is or was a broker with offices at Troy, New York.

All of defendant's dealings were with " Oelsen ".

It appears that on or about May 20, 1944, defendant applied to " Oelsen " for two policies of insurance to replace policies theretofore written by another insurer, which defendant had obtained through " Oelsen ", and which were cancelled. " Oelsen " communicated with " Northern " which in turn communicated with plaintiff; plaintiff issued the two policies and sent them to " Northern ", which in turn sent them to

." Oelsen ". " Oelsen " did not deliver the policies to defendant until the latter part of September, 1944.

" Northern " billed " Oelsen " for the premiums but " Oelsen " never paid " Northern " any part thereof; in any event, there is no proof of any payment by " Oelsen " or defendant to plaintiff.

" Northern " in its monthly accountings to plaintiff remitted for the monthly earned premiums on account of the policies in question for about four months, and " Northern " subsequently in monthly accountings and remittances to plaintiff deducted a credit for such remittances, since it ultimately received no payment thereof.

Defendant contends that for such payments as were made by " Northern " to plaintiff, defendant is entitled to credit; or, at least, to the extent of such payments, plaintiff cannot recover against defendant but that for such amount " Northern " should be the plaintiff.

This contention is without merit. (*Fields* v. *Western Millers Mutual Fire Ins. Co.*, 182 Misc. 895.)

Section 121 of the Insurance Law provides as follows: " Any insurer which delivers in this state to any insurance broker a contract of insurance pursuant to the application or request of such broker, acting for an insured other than himself, *shall be deemed* to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or which becomes due thereon in not more than ninety days thereafter." (Italics supplied.)

Defendant, pursuant to that section of the Insurance Law, maintains that he is entitled to full credit for his payments to " Oelsen ".

Plaintiff contends that said section creates merely a rebuttable presumption of authority of the broker to receive payments, which are binding on the insurer.

In support of such contention, defendant cites the case of *Matter of Barbour* (185 App. Div. 445, affd., 226 N. Y. 639).

In that case, section 243 of the Tax Law was under review and it provided that " every person *shall be deemed* to have died a resident, and not a nonresident, of the state of New York, if and when such person shall have dwelt or shall have lodged in this state during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death ". (Italics supplied.)

The fact was that decedent was a resident of the State of New Jersey.

The State Comptroller nevertheless sought to have the estate of decedent assessed for transfer tax in this State, as though decedent were a resident thereof, claiming that the word "deemed" in the above section of the Tax Law meant the same as "taken as if." In other words, the Comptroller contended that the words "shall be deemed" created a conclusive presumption.

The court in that case, however, held that the words at most created a rebuttable presumption.

Hence, plaintiff claims that the words "shall be deemed" in section 121 of the Insurance Law create only a rebuttable presumption.

The difficulty with that contention, or, at least with the proposition that the *Barbour* case (*supra*) is an authority for such contention is the fact that the Tax Law under consideration in the *Barbour* case (*supra*) also contained a provision that "The burden of proof in a transfer tax proceeding shall be upon those claiming exemption by reason of the alleged non-residence of the deceased", and the court in that case, at page 451, said that that "would seem strongly to indicate that the Legislature, in using the words 'shall be deemed,' intended merely to create a presumption of residence, where a person died under the circumstances mentioned in the statute, and that, at most, the word 'deemed' created a disputable presumption that such a person died a resident and not a non-resident of the State of New York." No counterpart of the modifying language found in the Tax Law appears in the Insurance Law.

The basis for construing the word "deemed" in the *Barbour* case (*supra*) as meaning a rebuttable rather than a conclusive presumption does not exist in the case at bar.

Plaintiff argues that "it is significant to note that the court held in the *Barbour* case that 'the Legislature cannot make so that which is not so' and that 'the statute does not make the fact otherwise than it is.'" (*Barbour* case, *supra*, p. 457.)

There can be no quarrel with that proposition. In effect, what the court then said is that the Legislature cannot make that a fact which in truth is not a fact. But the Legislature has the right to decree what the legal effect is of certain acts, even if the party committing such acts had no intention or desire to create such a legal effect. In the case of section 121 of the Insurance Law the Legislature did not, by the use of the words "shall be deemed", attempt to make a fact that which in truth was not a fact. What it did was to declare what should be

deemed the legal effect of certain acts. It said that if an insurer does certain things those acts shall have the effect of conferring authority on a broker to receive, for its account, payment of premiums.

The reasons for treating the words "shall be deemed" as used in section 121 of the Insurance Law as creating a conclusive presumption are as compelling as was the decision of the court in the *Barbour* case (*supra*) in treating the same words as used in the provision of the Tax Law then under consideration, as creating merely a rebuttable presumption.

It follows then that defendant is entitled to credit for any payments made by him to "Oelsen" on account of the premiums sought to be recovered herein.

It appears that "Oelsen" had an insurance account with defendant; that there was due to defendant from "Oelsen" a total of $752.95, as refunds of unearned premiums upon the cancellation of the policies which were replaced by those issued by plaintiff, the recovery of the earned premiums for which is the subject of this action, as well as for similar refunds on other policies, for which "Oelsen" purported to give defendant credit on account of the premiums due plaintiff; that the total of such credits was less than the amount of the premiums concededly due plaintiff; that on June 27, 1944, defendant paid to "Oelsen" $210.24 on account of the premiums due plaintiff. The credit aforesaid of $752.95 plus the aforesaid cash payment of $210.24, aggregate $963.19, for the full amount of which defendant seeks credit in this action as payment to plaintiff.

By reason of section 121 of the Insurance Law, "Oelsen" was authorized to receive payment for plaintiff's account, so that the cash payment of $210.24 made by defendant to "Oelsen" must be deemed as a payment to plaintiff.

The same rule does not apply, however, with reference to the credit which "Oelsen" gave to defendant for the sum of $752.95 representing refunds due from other insurers upon the cancellation by them of policies previously issued by them to defendant.

That sum does not represent any payment made by defendant to "Oelsen" as a broker for premiums due plaintiff. It represents a sum received by "Oelsen" as the agent of defendant. Moneys thus received by "Oelsen" are not such payments by an assured as to constitute payment to the insurer, within the meaning and intent of section 121 of the Insurance Law.

The moneys thus received by "Oelsen" were not received by him from the defendant, for the use and benefit of plaintiff,

as payment on account of the premiums due plaintiff, under the statutorily conclusively presumptive agency to receive payment of premiums, created by section 121 of the Insurance Law. Such moneys were received by "Oelsen" in an entirely different capacity, to wit, as the agent of defendant.

While it is true that the cash payment was received by "Oelsen" as the agent of defendant, that payment, by virtue of section 121 of the Insurance Law, was also received by "Oelsen" as agent of plaintiff. (*11 East 112th Street Corp.* v. *Travelers Ins. Co.*, 28 N. Y. S. 2d 38.)

Plaintiff has reserved the right to introduce in evidence two letters from the Insurance Department of the State of New York. The letters are dated June 20, 1947; one is to the effect that said department never issued a broker's license to "Oelsen"; the other is to the effect that said department did not license "Oelsen" as an agent of plaintiff under section 115 of the Insurance Law during 1944.

While these letters may be subject to objection, they are being received and marked plaintiff's Exhibits 3 and 4 respectively, with an exception to defendant.

The purpose of this evidence is twofold, first to prove that "Oelsen" was not in fact an agent of plaintiff.

The court finds that he was not in fact an agent of plaintiff in a general sense. But "Oelsen" was an agent of plaintiff, in law, to the extent provided for in section 121 of the Insurance Law.

The second purpose is to show that "Oelsen" was not a licensed broker and that hence, section 121 of the Insurance Law has no application.

"The fact that he was unlicensed has no bearing on the case inasmuch as he was treated as an insurance broker by both parties." (*Casper* v. *American Equitable Assurance Co.*, 143 Misc. 916, 917.)

Indeed, plaintiff's policy issued to defendant expressly names "Oelsen" as "local agent or broker."

Defendant introduced certain evidence, under objection, and subject to a motion to strike it out. The objection is overruled and the motion to strike out is denied, with exception to plaintiff.

The cases of *Allen* v. *German American Insurance Company* (123 N. Y. 6 [1890]); *Citizens' Fire Insurance Co.* v. *Swartz* (21 Misc. 671 [1897]); *Robinson* v. *Oliver* (171 App. Div. 349 [1916]); *Firemen's Fund Insurance Company* v. *Hall* (119 Misc. 702 [1922]); *Globe and Rutgers Fire Insurance Company* v. *Lesher, Whitman & Co., Inc.* (126 Misc. 874 [1926]) and *Casper*

v. *American Equitable Assurance Company* (143 Misc. 916 [1932], *supra*), dealing with the nature of the proof required in order to treat payments by an assured to a broker, as payments to the insurer, were all common-law decisions antedating the enactment of section 121 of the Insurance Law and were rendered obsolete thereby, insofar as they conflict therewith.

Indeed, section 121 of the Insurance Law was a new provision of that law enacted by chapter 882 of the Laws of 1939, in effect January 1, 1940, and was doubtless enacted to modify the common-law rule prevailing under those cases.

Plaintiff is entitled to judgment for the sum of $1,056.64, representing the conceded amount of earned premiums, to wit, $1,266.88 less the cash payment made by defendant to " Oelsen " of $210.24, together with interest and costs.

Submit decision and judgment accordingly.