ALFRED J. BOHLINGER, Superintendent of Insurance of the State of New York, as Liquidator of The Preferred Accident Insurance Company of New York, Respondent, *v.* AARON ZANGER, Appellant.

Argued April 22, 1953; decided January 14, 1954.

*Charles P. Butler* for appellant. I. Defendant, as an insurance broker, functions in a dual capacity and owes a fiduciary obligation to both the insureds and to the insurance company, which obligation cannot be diminished in its extent by any contention that he is agent of one party to an insurance transaction more than he is agent of the other party. (*Matter of Ebenstein* v. *Pink,* 249 App. Div. 164, 275 N. Y. 613.) II. No settlement by defendant having been made with the insurance company before its ordered liquidation and cancellation of contracts, defendant, in his dual capacity, discharges his fiduciary agency obligation to the insurance company by paying to it the earned premiums and discharges his fiduciary agency obligation to the insureds by crediting or returning to them the unearned premiums. III. Accepting the construction of defendant's status as only and exclusively the agent of the insurance company, which is the reasoning of the court at Special Term and affirmed by the Appellate Division, defendant should not pay more than the earned premiums to plaintiff. (*Carson* v. *Federal Reserve Bank,* 254 N. Y. 218.)

*Irvin Waldman* and *Alfred C. Bennett* for respondent. I. Defendant's liability as a fiduciary of the now defunct insurance company is fixed by common law and statute. (*Matter of Ebenstein* v. *Pink,* 249 App. Div. 164, 275 N. Y. 613; *Hermann* v. *Niagara Fire Ins. Co.,* 100 N. Y. 411; *Von Wein* v. *Scottish Union Nat. Ins. Co.,* 20 Jones & Sp. 490; *Grace* v. *American Central Ins. Co.,* 109 U. S. 278; *Bank of United States* v. *Braveman,* 259 N. Y. 65; *Gerseta Corp.* v. *Equitable Trust Co. of N. Y.,* 241 N. Y. 418.) II. Defendant's failure to remit to the insurance company the moneys due it for premiums, prior to the entry of the order of liquidation, does not authorize him to interfere with the orderly process of liquidation and give unlawful preferences by dealing with the assets of the defunct company. (*Pink* v. *Title Guar. & Trust Co.,* 274 N. Y. 167.) III. Defendant must account for and pay over the entire premium collected by him to the liquidator. He may not offset or deduct unearned portions thereof.

Dye, J. In this appeal by our permission, we deal with an aspect of the dual agency status of an insurance broker, namely, whether upon the cancellation of policies of insurance pursuant

to an order of liquidation, premium moneys in the hands of a licensed broker belong *in toto* to the statutory liquidator or only so much thereof as represents the prorata premium earned to date of liquidation.

The problem arises in this motion for judgment on the pleadings in an action brought by the State Superintendent of Insurance as statutory liquidator of the Preferred Accident Insurance Company against the defendant, a licensed broker, for insurance premiums collected, but not remitted to the company prior to effective date of the liquidation order. For the purposes of this motion, we treat as true the allegations in the pleadings from which it appears that prior to May 2, 1951 (the effective date of the liquidation order), the company had issued in due course and at the request of the defendant broker, two policies of automobile insurance to two separate individuals who paid the broker the full premium and which the broker had not remitted to the company prior to the effective date of the liquidation order. The liquidator sues to recover such sums *in toto*.

In his answer the defendant broker admits that he collected and has possession of the full premiums, but denies that plaintiff as liquidator is entitled to anything more than the prorata premium earned on the respective policies to date of termination, less his commissions, which differences he concedes are due and owing and which he is willing and able to pay and consents that a judgment may be entered against him in such an amount and asks that the complaint be otherwise dismissed.

With the issue thus joined, the plaintiff moved at Special Term in Supreme Court, New York County, for judgment on the pleadings, which motion was granted, except that commissions were allowed, on the general ground that in law, the broker in receiving the premiums was acting for the insurance company (Insurance Law, § 121) and while holding same was its fiduciary (Insurance Law, § 125). Upon appeal the Appellate Division, First Department, unanimously affirmed without opinion.

It is a well-settled principle of common law that an insurance broker, when acting for an insured, is deemed the agent of the insured, which principle is now embedded in the statute

(Insurance Law, §§ 111, 119) and that at the same time the broker has authority to receive premiums on behalf of the insurer (§ 121). The validity and applicability of these general principles to this case are not challenged nor are the rights of the insured involved.

The dispute turns, rather, on the meaning of these sections when read in connection with section 125 which, so far as pertinent, provides: " Every insurance * * * broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as * * * insurance broker and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or in any other capacity."

When these sections are read together it cannot reasonably be said that the fiduciary obligation thus created is exclusively for the protection of the company but must be deemed to have reference, insofar as the company is concerned, to those moneys in which the company has an interest. While the statute forbids commingling of funds, it does not, in so many words, require a broker to maintain a separate bank account for deposit of the funds of each such principal so long as the amount " held for each principal [is] reasonably ascertainable from the books of account and records of such agent or broker, as the case may be " (§ 125); that the broker has fully complied with the requirement of this section is not challenged here.

Had the Legislature intended to treat all premium moneys in the hands of a broker as belonging to the company, it is reasonable to assume that it would have said so in more particular language. What they unquestionably had in mind was the well-recognized dual agency status of the broker in his dealings with the companies and their insureds and that there would be times in the course of such dealings when a broker would have moneys in his possession subject to the rights of the insurer, particularly in the situation where the policy concerned is terminated prior to settlement of his accounts. We are told — and the Legislature must be deemed to have known about it — that when termination occurs before settlement of accounts, for which a ninety-day period is allowed (§ 121), it is an accepted practice according to general usage for brokers

to deal with such accounts by remitting to the company the prorata premiums earned to date of termination less commission and by refunding to the insured the unearned portion. When, on the other hand, the broker has settled his accounts with the company and remitted to it the full net premium prior to the termination date of the policy, the procedure usually followed is for the broker, if so authorized, to make a claim for refund of the unearned part of the premium or, in a given case, the insured may make his claim direct. If, however, the policy is terminated before the insured has paid the premium either to the broker or to the company, the company has a right to collect from the insured only such sum as represents the prorata earned premium to date of cancellation for in truth that is all the insured justly owes. The Legislature must be deemed to have had the situation and practice in mind when it enacted the applicable legislation and this affords strong grounds for construing the statute as a two-way proposition in the public interest aimed at protecting the company for premiums earned and the insured for refunds of premiums unearned. Such a construction gives recognition to the established relationship of principal and agent existing between broker and insured (*Clinchy* v. *Grandview Dairy,* 283 N. Y. 39). We see no distinguishing difference when cancellation prior to settlement is accomplished by operation of law (§ 514).

In such event the liquidator concedes that in dealing directly with an insured to recover an unpaid premium, he may collect only the prorata premium earned to date of liquidation or, if the full premium has been paid prior to liquidation, he may eventually retain only so much as represents the earned premium and, if his assets permit, is obliged to refund the unearned portion. Notwithstanding such common-sense rule, the liquidator says that, when liquidation occurs, such reasonable practices are no longer available, but that, on the contrary, the premium moneys in the broker's possession belong *in toto* to the liquidator; that as soon as the liquidation order becomes effective the broker is without power or authority to do other than turn over *in toto* all premium moneys in his possession; that to permit him to do otherwise would lead to a substitution of his judgment for that of the liquidator and would lead to the giving

of unlawful preference and would amount to an avoidance of the restraining order enjoining him from "dealing with or disposing of the property or assets of said Company, or doing or permitting to be done any act or thing which might waste the assets or allow or suffer the obtaining of preferences"; that it is only the liquidator who may make distribution of company assets and then only with the approval of the Supreme Court; that a broker may not interpose his business practices as paramount to statutory sanction for the orderly liquidation of insolvent properties by the liquidator. Upon insolvency, assets must be equally distributed among general creditors without preference or priority (*Bank of United States* v. *Braveman*, 259 N. Y. 65; *Gerseta Corp.* v. *Equitable Trust Co.*, 241 N. Y. 418; *Pink* v. *Title Guar. & Trust Co.*, 274 N. Y. 167).

In liquidation, the liquidator for all practical purposes takes the place of the insolvent insurer. The liquidation order terminates the company's existence. The liquidator takes immediate possession and control of the assets and proceeds to a liquidation of its affairs. The broker is trustee for moneys belonging to his principal which, in the event of termination prior to settlement, is the prorata earned portion of the premium. The company, while a going concern, has no right to the unearned portion. That belongs to the insured. Liquidation does not change the situation and the liquidator should not and may not be placed in a better position than the company he takes over and demand that which is not owed. The relationship existing between liquidator and broker, as we see it, is no different than the relationship existing between company and broker. It does not arise out of mutual debt but by reason of a fiduciary capacity imposed by statute (§ 125). The obligation running between the parties is that of trustee and beneficiary rather than debtor and creditor. When so viewed, the earned portion of the premiums is not held by the broker as an offset to a debt owing but rather as a trust fund for the benefit of its insurer or, as here, the successor in interest, the liquidator. The defendant concedes his obligation in that regard and as to it stands ready, willing and able to pay. Under such a view, we find nothing in the statute warranting or requir-

ing the broker under the circumstances of this case to turn over the full premium *in toto* to the liquidator. As we read section 125 in connection with sections 111, 119 and 121 and in light of accepted usage and business practice, it is not intended to treat funds in the hands of a broker — when termination occurs prior to settlement — any differently in liquidation than before. The circumstance of insolvency does not operate to convert the unremitted unearned portion of a premium into an asset for the liquidator. We pass on no other question.

The judgments appealed from should be modified to the extent that the defendant is directed to pay to the plaintiff the earned premium on the subject policies to the date of termination, less commissions, and, as so modified, affirmed, with costs to the defendant in all courts, and the action remitted to the Supreme Court with the direction that a judgment be entered in favor of the plaintiff in accordance with the opinion herein.

Fuld, J. (dissenting). The Insurance Law contains a comprehensive scheme for the conduct of the insurance business, the regulation of those engaged in it and the liquidation of insurance companies whose solvency is questionable. The decision now being handed down, I very much fear, distorts the legislative pattern, as well as the pre-existing common law, and establishes a new set of rules governing the rights of those affected.

From a very early date, the courts have uniformly held that, when an insurer entrusts a broker with a policy of insurance for delivery to the insured, the broker acts as agent for the insurer in collecting and receiving the first premium and, consequently, that payment to the broker is deemed payment to the insurer. (See, e.g., *Minett* v. *Forrester,* 4 Taunt. 541, 544–545, 128 Eng. Rep. 441; *Mord* v. *Hartford Accident & Ind. Co.,* 245 N. Y. 279, 283–284; *Allen* v. *German Amer. Ins. Co.,* 123 N. Y. 6, 16; *Matter of Leterman* v. *Pink,* 249 App. Div. 164, 168, affd. *sub nom. Matter of Ebenstein* v. *Pink,* 275 N. Y. 613; *Matter of Sommer,* 12 N. Y. S. 2d 47; *Maloney* v. *Rhode Island Ins. Co.,* 115 Cal. App. 2d 238; *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 379; *Indiana Ins. Co.* v. *Hartwell,* 123 Ind. 177, 192; *Ocean Accident & Guar. Corp.* v. *Emporia Tel. Co.,* 139 Kans. 106, 110; *Sun Ins. Office* v. *Mallick,* 160 Md. 71,

82–83; *Gilbert* v. *Malan*, 231 Mo. App. 469, 482; *Arthurholt* v. *Susquehanna Mut. Fire Ins. Co.*, 159 Pa. 1, 6; *Witt* v. *Employers Liability Assur. Co.*, 198 Wis. 561; see, also, 2 Mechem on Agency [2d ed., 1914], §§ 2368, 2369, pp. 1939–1942; 16 Appleman on Insurance Law and Practice [1944], p. 164; 2 Couch's Cyclopedia of Insurance Law, § 452, p. 1297; and cases collected 1 Couch, *loc. cit.* [1945 Cum. Supp.], § 452, Note 3, pp. 486–487.) And, in 1939, when New York State revised its Insurance Law, that settled rule was written into the statute as section 121:

> "Any insurer which delivers in this state to any insurance broker a contract of insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive *on its behalf* payment of any premium which is due on such contract at the time of its issuance or delivery or which becomes due thereon in not more than ninety days thereafter." (Emphasis supplied.)

The language of section 121 is clear, and clear, too, was the legislature's purpose to reflect "the general custom of the community * * * that payment to the broker constitutes payment to the insurer" (Report of Joint Legislative Committee on Revision ·of the Insurance Laws, N. Y. Legis. Doc., 1939, No. 101, p. 13) and to codify "the rule of law" that "payment to the broker is payment to the [insurance] company." (1 Public Hearing of Joint Legislative Committee for Recodification of the Insurance Law [1937], p. 161.)[1]

---

1. A wealth of other legislative history further confirms the statute's design. For instance, the Insurance Department, which sponsored the recodification, announced that proposed section 121 — numbered section 54.3 in the Department's draft — "is based upon general principles of the law of agency, as the possession of the policy gives the broker an implied authority to receive the premium" (Insurance Law Revision of State of New York, Tent. Draft, Prepared by Insurance Department of New York [1937], § 54.3, p. 123; see, also, Supp. No. 2 to Second Draft [1938], § 54.3, p. 17), and this the Department underscored by its Note to section 50.2, later enacted as section 111 of the Insurance Law; "under § 54.3 [present § 121]," the Note stated, "the insurance broker or his agent is deemed an agent of the insurer in collecting or receiving premiums." (Insurance Law Revision, Tent. Draft, *op. cit.*, § 50.2, pp. 101–102. See, also, 1 Public Hearing of Joint Legislative Committee, *op. cit.*, pp. 160–163; Hearings Before the Senate and Assembly Committee on Insurance Recodification Bill [1939], pp. 119–122, 137–142, 154–155.)

As is evident — indeed, as was made manifest by revision notes, committee hearings, legislative reports and the statute itself — section 121 was designed to relieve the insured from all risks stemming from a broker's possible dishonesty or insolvency. When, therefore, on March 2, 1951, and April 27, 1951, respectively, appellant's customers paid him the premiums for their policies, they in effect paid the insurer and obtained insurance coverage for a year. Had an order of liquidation not been entered, the insurer, though it might never have received one penny of those premiums, would, nevertheless, have been liable upon the policies and required to pay any and all losses suffered after May 2, 1951, the date of the order. The reason is simple: the broker, when he collected the premiums, is deemed to have received their entire amount as the insurer's agent and '' on its behalf.''

The rule is precisely the same, if and when the insurer subsequently becomes insolvent. Indeed, as long ago as 1811 (*Minett* v. *Forrester, supra,* 4 Taunt. 541, 128 Eng. Rep. 441; see, also, *Goldschmidt* v. *Lyon,* 4 Taunt. 534, 128 Eng. Rep. 438), and as recently as January of last year, 1953 (*Maloney* v. *Rhode Island Ins. Co., supra,* 115 Cal. App. 2d 238), courts have held that, since payment to the broker is payment to the insurer, the premium received by the broker belongs to the insurer's assignee in bankruptcy or its liquidator. In the *Minett* case (*supra,* 4 Taunt. 541, 128 Eng. Rep. 441) an insurance broker was sued by the underwriter's assignee in bankruptcy for premiums received by the broker before the underwriter became insolvent. In the course of his opinion, upholding the assignee's right, MANSFIELD, C. J., wrote, in language most apposite (4 Taunt. 544–545):

'' The broker * * * is agent for the underwriter as to the premium * * * and he is supposed to receive the premium from the insured for the benefit of the underwriter * * *. The insurer, with respect to the insured, is supposed to have received the premium * * *. That being so, there is no doubt that at any time after the premiums have been so received by the broker, the underwriter may call upon him for these premiums and compel immediate payment of them * * * and when he

became a bankrupt, his right to the premium was immediately communicated to his assignees; they had a right to call on the broker, and compel him to pay the premium to them for the benefit of the bankrupt's estate.''

And in the *Maloney* case (*supra*, 115 Cal. App. 2d 238) it was unequivocally decided that the fact that the insurer had become insolvent changed nothing; the broker continued to hold the premiums as agent and fiduciary for the insurer and was required to turn over to the statutory liquidator the unearned as well as the earned portion. The opinion reads in part as follows:

" When the broker accepts the policy from the insurer and the premium from the assured, he has elected to act for the insurer to deliver the policy and to collect the premium. [p. 244]

\* \* \*

" Thus the real question is whether or not, when the broker is intrusted with and accepts the policy from the insurer for delivery to the assured, and accepts the premium from the assured for delivery to the insurer, such facts create an actual agency.

" The English and American cases are uniform in holding that in such cases the broker acts as agent for the insurer. [p. 245]

\* \* \*

" Thus it must be held that in the instant case appellants were the agent of Rhode Island [Ins. Co.] to deliver the policy and to collect the premium. Therefore, when the premium was delivered to appellants they owed a fiduciary duty to Rhode Island to transmit it and were the agents of Rhode Island for that purpose. [p. 247] ''

And that is as it should be. If the rule, that payment to the broker is payment to the insurer, applies absent insolvency, not only logic and consistency, but reason and fairness as well, dictate that it apply also if insolvency intervenes before the broker transmits the premiums. Assuming, as we must, that, had the insurer continued solvent, appellant's customers would have enjoyed the same rights and privileges as policyholders

whose payments had actually been turned over to the insurance company, I do not understand how it may be said that, when the company has met financial misfortune, those insured customers of appellant may, by treating their premiums as unpaid, avoid sharing the loss which the other policyholders will have to bear.

Nor does anything in either section 111, 119 or 125 of the Insurance Law — upon which reliance is placed to reach a contrary result — change the common-law rule or weaken in the slightest the meaning of section 121. Section 119, which lists the requirements — such as age, moral character and education — for the issuance and renewal, for the suspension or revocation, of a broker's license, does not even remotely touch upon the question before us. Section 111 simply defines a broker as the agent of the insured for the purpose of " placing risks or taking out insurance," and there it stops. Not a word about the broker being the agent of the insured or acting on his behalf in receiving or transmitting premiums.[2] And, finally, section 125 does no more than prescribe that the broker is to be responsible " in a fiduciary capacity " for any funds received by him as broker. While the language does not specify to whom the " fiduciary " duty is owed, it is almost self-evident that, when the broker collects premiums under the circumstances described in section 121, he necessarily becomes a fiduciary for the insurer — for it is " on its behalf " that he receives those funds. A broker may, it is true, serve both insured and insurer, but, in the very nature of things, he cannot be agent for both at one and the same time and with respect to the same transaction. To hold otherwise places an unwarranted gloss on the plain wording of sections 111 and 121.

The legislature has used apt language to deal with a practical situation, and there is nothing recondite or mysterious about

2. Significantly, in its Revision Note to section 111, the Insurance Department, after observing that the definition of " insurance broker" does not include such incidental services as " delivering policies and collecting premiums", went on to say that the public is protected without requiring the licensing of persons performing those ministerial duties, "since under § 54.3 [present § 121] the insurance broker or his agent is deemed an agent of the insurer in collecting or receiving premiums " (Insurance Law Revision, Tent. Draft, *op. cit.,* § 50.2, pp. 101–102).

the arrangements effected. For the purpose of placing insurance, the broker is the agent of the insured (§ 111); for the purpose of delivering the policy and collecting the premium due upon it, he is the agent of the insurer (§ 121; see, also, *Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411, 415; *Holskin* v. *Hurwitz*, 211 App. Div. 731, 733; *Von Wein* v. *Scottish Union & Nat. Ins. Co.*, 20 Jones & Sp. 490, 494; *Grace* v. *American Central Ins. Co.*, 109 U. S. 278; 2 Mechem, *op. cit.*, § 2368, p. 1939; 2 Couch, *op. cit.*, § 452, p. 1297.) That is what this court wrote in the *Hermann* case (*supra,* 100 N. Y. 411, 415), and that is what every other tribunal that has considered the matter has, in a variety of contexts, decided. (See cases cited, *supra,* pp. 235–236, and cases collected, 1 Couch, *op cit.*, § 452, Note 3, pp. 486–487.) As Couch in his Cyclopedia put it (*op. cit.*, p. 1297), '' In fact, it is said to be a general rule that an insurance broker acts for the insured for the purpose of making the application and procuring the policy, and for the insurer for the purpose of collecting and remitting the premium and delivering the policy.''

It may well be that, when a policy is terminated before settlement of the broker's accounts with the insurer, it is '' accepted practice '' or '' general usage,'' *in the absence of insolvency or an order of liquidation,* '' for brokers to deal with such accounts by remitting to the company the prorata premiums earned to date of termination  *  *  *  and by refunding to the insured the unearned portion '' (opinion, pp. 232–233). But it does not follow from this that a broker may adhere to his practice once insolvency intervenes or an order of liquidation is entered. When the insurer is fully solvent, and presumably able to pay all claims, nothing turns on the broker's act, or on the capacity in which he acts, in refunding the unearned premium to the insured. Had the broker not made the refund, the insurer would, of course, have done so; the repayment was handled in the most convenient manner and involved no more than a bookkeeping matter. With the advent of insolvency, however, the rights of creditors must be taken into account, and, for the first time, it becomes important to decide whether the premiums held by the broker belong to the insurer or to the insured. However current or accepted it may be, there-

fore, the practice of brokers in dealing with the funds of a solvent insurer can throw no light whatsoever on the question presented by this appeal, for it is in no way inconsistent with the rule that payment to the broker is payment to the insurer.

Today's decision may, on superficial consideration, appear to protect an innocent insured. However, it is pertinent to inquire at whose expense this protection is being afforded. All policy-holders who have paid the insurer directly, or whose brokers have transmitted the collected premiums expeditiously, will have to await the orderly liquidation of the insurer's affairs, and will receive repayment of only so much of their unearned premium as the company's assets permit. Not so, though, the customers of the broker who delays his remittals; that broker, under the present decision, may conduct a private liquidation and immediately return to his customers the full amount of the unearned premium. Most strangely, therefore, the broker who remits promptly does a disservice to those who employed him to place their insurance.[3]

Moreover, unless the principles now announced by the court are abandoned when the situation is reversed, and it is the *broker* who is insolvent, the protection which the legislature intended insured persons to have will be undermined and set at naught. Under the logic and rationale of the present decision, if the insurance broker were to become bankrupt, or if he were to convert the premiums in his hands, the insurer could cancel the policy and throw the loss upon the insured so far as the unearned premium is concerned. That is the other side of the coin, the other " way " — so to speak — that we must travel, if, as Judge Dye puts it (opinion, p. 233), the court is construing the statute as " a two-way proposition ". While my views concerning the wisdom of such " a two-way proposition " may be irrelevant, the legislature's plain provision to the contrary, its direction that the broker receives the premium " in

3. I know of no authority for the court's statement (opinion, p. 232) that the broker is allowed ninety days within which to remit the premiums collected. Section 121 of the Insurance Law, to which reference is made, does mention ninety days, but manifestly that ninety-day period is a *limit* on the authority of the broker to receive premiums from the insured, not a *latitude* to withhold them from the insurer on whose behalf they were received.

a fiduciary capacity '' on '' behalf '' of the insurer, certainly should not be disregarded.

The judgments of the courts below should be affirmed.

LEWIS, Ch. J., CONWAY and FROESSEL, JJ., concur with DYE, J.; FULD, J., dissents in opinion in which DESMOND, J., concurs; VAN VOORHIS, J., taking no part.

Judgment accordingly.