Irving L. Levey, J.
The plaintiff seeks a declaratory judgment against the defendants, pursuant to section 473 of the Civil Practice Act, in connection with a policy of automobile insurance which it had issued to defendant, Both, on the ground that it was effectively cancelled for nonpayment of premiums prior to an alleged accident and, that therefore it is not obliged either to respond in damages or to assume the defense of any claims arising out of said accident. The insured defaulted in appearance, but the alleged injured parties maintain that the policy was in full force and effect at the time of the accident. In lieu of trial, the parties have submitted the issues involved in an agreed statement of facts.
Briefly, the facts are, that, under date of June 12, 1959, plaintiff issued, to defendant, Both, through his broker, Jay Meadow, Inc., a family combination automobile liability policy for the period from June 12, 1959 to June 12, I960. According to its terms, the premium of $186.90 was to be paid in three installments as follows: $75.66 on June 12, 1959 which was paid; $55.62 on September 12, 1959; and the balance on December 12, 1959.
*1081 The second installment of $85.62 was not paid on its due date, and plaintiff, thereafter, pursuant to the provisions of the policy, issued its notice of cancellation, under date of November 5, 1959, addressed to the insured, advising him that the policy was cancelled and would terminate at 12:01 a.m. on November 16,1959. Following the issuance of this notice, and on November 18, 1959, plaintiff filed a notice of the cancellation with the Motor Vehicle Bureau, in accordance with the requirements of section 313 of the Vehicle and Traffic Law.
The parties stipulated further that the insured had mailed his check to the broker on November 6, 1959 in payment of the September 12 installment. Notwithstanding the payment to the broker, it was agreed by the parties that plaintiff had not, orally or in writing, reinstated, renewed, or extended the policy. No testimony or other evidence was offered to establish that the installment delivered to the broker had been remitted to plaintiff and it must be assumed, from the stipulation, that such payment never had been made to plaintiff.
The motor vehicle covered by the afore-mentioned policy was involved in an accident on December 6, 1959 and the other defendants allegedly were injured. An action was commenced by such persons and is now pending against the insured in this court. The plaintiff has taken the position that it would not extend coverage to said action or defend the same, claiming that its policy was not in effect at the time of the accident.
Both parties agree that a cancellation notice becomes effective as of the date of mailing thereof—in this instance, November 5, 1959.
Plaintiff urges that the insured’s broker had no authority to receive the premium from the insurer in. order to reinstate the policy, theretofore cancelled. Defendants contend, to the contrary, that, pursuant to section 121 of the Insurance Law hereinafter set forth, a payment to a broker within 90 days of the due date is a timely payment and that, therefore, the payment to insured’s broker resulted in a valid reinstatement of the policy.
Section 121 of the Insurance Law provides: 11 Any insurer which delivers in this state to any insurance broker a contract of insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within ninety days after the due date *1082 of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.”
It is clear, from this section, that an insured’s broker, who is normally the agent of the insured, is vested with the authority to act for the company in connection with receipt of premium, installment premium or additional premiums which become due or payable. (The broker is made the agent of the insurer to receive those funds which become owing to the insurance company, Bohlinger v. Zanger, 306 N. Y. 228.) Absent, however, is any provision concerning the power of the broker to extend the time of payment of a premium, or to reinstate a policy which has been cancelled by the insurer.
That the authority of the insured’s broker is limited to the period in which the policy remains in force is evident from a review of the history of the legislation which enacted section 121. Prior to its adoption, the Insurance Department recommended to the Legislature numerous revisions in order to clarify the Insurance Law and to bring it into conformity with existing business practices. In connection with section 121, the department said: “ This is new, but conforms to current practices. This is a relatively mild provision, as many states provide that such a broker is deemed the agent of the insurer for all purposes, including waiver and estoppel. As applied to a case whore the insurer delivers the policy to the broker, as agent for the insured, the principle of the above statute is based upon general principles of the law of agency, as the possession of the policy gives the broker an implied authority to receive the premium.” (See Insurance Law Revision, Tentative Draft, Prepared by Ins. Dept. of N. Y., 1937.)
It is significant that the Insurance Department commented that this was a mild provision, not intended to extend authority to brokers to exercise the right of waiver, or to create an estoppel. All that was proposed to the Legislature, therefore, was a recognition of an existing rule which held that a broker had authority to “receive” funds. At the time of its adoption, it was likewise acknowledged that a broker had no authority to reinstate a policy which had been cancelled by a company for nonpayment, of premiums, and that a payment of a premium to the broker after such cancellation did not constitute a waiver of the cancellation (Mord v. Hartford Acc. & Ind. Co., 245 N. Y. 279). Had the Legislature intended to modify this rule, it would have said so in clear and convincing language. (See Bohlinger v. Zanger, 306 N. Y. 228, 232, supra.)
The 90-day provision in section 121 may not be considered as a period of extension of time to pay premiums, or a grant *1083 of authority to reinstate cancelled policies. Instead, it is simply a limit on the time within which a broker may receive moneys that become due and payable to an insurance company.
Nor did the 1952 amendment modify the purpose of the statute in any respect. At the time of the proposal of the amendment, the Insurance Department suggested that the broker be authorized to collect installment premiums as well as additional premiums. Accordingly, the amendment must be confined to that matter only (see 1952 Insurance Department Recommendations).
It is still the law that, in the absence of express or implied authority, an insured’s broker may not countermand a cancellation of a policy (Mord v. Hartford Acc. & Ind. Co., supra ; Williams v. Republic Ins. Co., 286 App. Div. 876 [1955]). Since the broker cannot bind the insurer to initial risks, he cannot obligate the company to a reinstatement of a terminated risk.
In confirmation of all of the foregoing conclusion, reference must be made to section 313 of the Vehicle and Traffic Law. Under that statute, an insurer may cancel a policy for nonpayment of premiums by giving 10 days ’ notice of cancellation. During the 10-day period, the insured must procure a replacement policy or else surrender his automobile license. (Empire Mut. Ins. Co. v. Liberty Mut. Ins. Co., 21 Misc 2d 1050.) For the protection of the public, the Legislature directed the Commissioner of Motor Vehicles to revoke a license if insurance coverage were not supplied within 10 days. If the contention of the defendants prevailed, then, the obligation of the Commissioner to cancel a license would be set at naught. No one — either the Commissioner, the insurance carrier, or the public — would know whether or not insurance coverage was provided for during such 90-day period in which the driver of the vehicle could operate the same with impunity and without paying-premiums for required insurance coverage. This, certainly, was not intended by the Legislature.
The policy of insurance having been cancelled effectively, and not having been reinstated it follows that payment of the installment to the broker after such cancellation was not timely and did not effect insurance coverage in this case.
Defendants refer the court to the case of Merchants Mut. Ins. Co. v. Valilis (11 A D 2d 324) as authority for the proposition that payment to a broker within the 90-day period was timely. The Appellate Division did not so find in that case. All that it did was to decide that a third-party complaint against a broker was not properly interposed in an action for declaratory judgment. In passing, the court said that “ if timely ” payment had *1084 been made, the action for a declaratory ¡judgment would fail. Judgment is. hereby rendered in favor "of the plaintiff and against the defendants.