HOBBS BROOK AGENCY, INC. *vs.* NORTH RIVER INSURANCE COMPANY. March 23, 1979. By this action the plaintiff insurance brokerage firm (Hobbs Brook) sought a declaration that the defendant insurance company (North River) was responsible for the acts of a dishonest middle-man insurance broker (Lemole) who misappropriated two-thirds of a three-year prepaid premium for a North River policy issued to Hobbs Brook's client, Phoenix Steel Corporation. Hobbs Brook further sought the return of the amount of the premium it paid to North River after the misappropriation was discovered, apparently in order to forestall North River's cancellation of the policy at the beginning of the second year of coverage, and an injunction prohibiting the cancellation of the insured's three-year policy until its expiration date. (It is agreed that the substantive rights of the parties are governed by the law of New York.) The case was tried to a judge of the Superior Court on a partial stipulation of facts. At the conclusion of the trial the judge entered a judgment granting Hobbs Brook the relief it sought, except as noted below. The case is before this court on the judge's "Findings, Rulings and Order for Judgment," and designated portions of the transcript and exhibits. In reviewing the trial judge's ultimate conclusions, it is our duty to draw our own inferences and reach our own conclusions. We may make our own findings of fact where the judge made none. However, her subsidiary findings of fact will not be set aside unless clearly erroneous. *Sanguinetti* v. *Nantucket Constr. Co.,* 5 Mass. App. Ct. 227, 228 (1977). *Hutchinson* v. *Hutchinson,* 6 Mass. App. Ct. 705, 707-708 (1978). See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Upon a careful review of the entire record we conclude under the statutory language of New York Ins. Law § 121 (McKinney 1966) and the law of "apparent authority" (see *Ford* v. *Unity Hosp.,* 32 N.Y.2d 464, 473 [1973]) that, at the time Lemole delivered the three-year prepaid policy to Hobbs Brook and received in return Phoenix Steel's premium through Hobbs Brook, he was acting as North River's agent, and, accordingly, that because Lemole subsequently misappropriated part of the premium North River must bear the loss. 1. The judge ruled that "Lemole received the three-year premium in his capacity as agent of the insurer pursuant to Section 121." We agree. The use of subbrokers has been said to be customary in New York, cf. *General Acc. Fire & Life Assur. Corp.* v. *Johnson,* 13 Misc. 2d 690, 692

(N.Y. Sup. Ct. 1958); *Musso* v. *American Lumbermen's Mut. Cas. Co.,* 14 Misc. 2d 450, 454 (N.Y. Sup. Ct. 1958), and we have found no authority for denying the protection afforded brokers by New York Insurance Law § 121, merely because more than one broker was involved in the transaction. Furthermore, by the operation of § 121 a broker is authorized to play a dual role. An insured's broker, normally the agent of the insured, is vested with authority, pursuant to § 121, to act for the insurer to receive premium payments on its behalf. *Bohlinger* v. *Zanger,* 306 N.Y. 228, 231-232 (1954). *Standard Acc. Ins. Co.* v. *Roth,* 28 Misc. 2d 1080, 1082 (N.Y. Sup. Ct. 1961). We think that when Lemole undertook at the behest of Hobbs Brook to find an insurer for Phoenix Steel and obtained the desired coverage through the efforts of a third broker, Bacon and Chinnock (Chinnock), Lemole was acting as a broker for Phoenix Steel and its agent, Hobbs Brook. And when Lemole obtained the North River prepaid policy from Chinnock and presented it to Hobbs Brook, he was the agent of North River. Further, the possession of the policy, under the general principles of the law of agency incorporated into § 121 implied the authority to receive the premium. Cf. *Bohlinger* v. *Zanger,* 306 N.Y. at 232. 2. The effect of § 121 is that "if an insurer does certain things those acts shall have the effect of conferring authority on a broker to receive, for its account, payment of the premiums." *Central Sur. & Ins. Corp.* v. *Marro,* 189 Misc. 823, 827 (N.Y. Sup. Ct. 1947). The acts that create the authority under § 121 include "delivery" of the policy to the broker. We find no support for North River's contention that physical delivery to the broker is a prerequisite for the application of § 121 protection. The judge found as matter of fact that North River knew or should have known that Chinnock would deliver the policy to Lemole and that Lemole would receive the premium payments from Phoenix Steel. As there is sufficient evidence to support this finding, we think that in these circumstances North River "delivered" the policy to Lemole within the meaning of § 121. Accordingly, we conclude that Lemole is deemed to have received the premiums as agent for the insurer, *Bohlinger* v. *Zanger, supra* at 231-232, and that because he misappropriated part of the premium, North River must bear the loss. *Central Sur. & Ins. Corp.* v. *Marro, supra.* 3. In addition to the statutory basis for our conclusion that Lemole was the agent of North River, there is another basis to support the judge's ruling that Lemole had apparent authority to accept the premium payment in question. When Hobbs Brook requested Lemole to obtain an endorsement changing the one-year policy to a three-year prepaid policy, Lemole was able to obtain North River's endorsement effecting the requested change on the same day. Compare *Kramnicz* v. *First Natl. Bank,* 32 App. Div. 2d 1009, 1012 (N.Y. 1969). It is fair to say that the judge could view this as significant. Accordingly, there is support in the record for a finding that the action of North River in promptly issuing the endorsement and sending it back through the chain of brokers gave Lemole apparent authority to obtain the payment. Compare *Ford* v. *Unity Hosp.,* 32 N.Y.2d at 472-473. 4. It is apparent from the record

that the post-trial stipulation entered into by the parties was intended only to correct a mathematical error. It did not foreclose Hobbs Brook's right to seek the interest it is entitled to by law. Although the judge did not expressly order the payment of interest, such interest is allowed either under a theory that North River wrongfully detained the substitute premium payment or that it withheld money which rightfully belonged to Hobbs Brook. *Goldman* v. *Worcester*, 236 Mass. 319, 321 (1920). *Vaughan* v. *Lemoine*, 330 Mass. 83, 87 (1953). The interest runs from the date of a demand for payment. *Id.* at 88. *Davidson* v. *Robie*, 345 Mass. 333, 341 (1963). Cf. G. L. c. 231, § 6C. We are of the opinion that Hobbs Brook should be awarded interest on its claim from June 11, 1975, the date when, as the parties stipulated at trial, counsel for Hobbs Brook sent a demand letter to North River. And, as neither party has made an argument as to which State's law governs this point, we hold that the law of Massachusetts is controlling. *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.*, 343 Mass. 622, 625 (1962). 5. We are not persuaded that there is merit to any of the other contentions raised by North River. In view of the broad protective nature of § 121 and the legislative intent to shift the losses caused by dishonest brokers to insurers (see *Bohlinger* v. *Zanger*, 306 N.Y. at 237 [Fuld, J., dissenting]), and in the absence of persuasive law to the contrary, we see no policy reason for excluding brokers such as Hobbs Brook from the protection afforded under § 121. Furthermore, we agree with the judge's implied ruling that although "[b]oth parties could have acted more cautiously to avoid the loss," their lack of caution does not rise to the level of an estoppel. 6. The defendant's contention that the judge erred in excluding Chinnock's testimonial evidence is without merit. The excluded question and answer were directed solely to the issue of Chinnock's purpose in placing Lemole's name on certain documents. There was no "disputed term" requiring evidence on custom and usage in the trade. In any event, the question directed to Chinnock did not elicit such information. 7. In view of the above conclusions we do not address the correctness of the judge's ruling that the second endorsement appears to have been obtained as part of the contract procurement and negotiation process. The judgment is to be modified in accordance with part 4 above, and, as so modified, is affirmed.

*So ordered.*

*David S. Mortensen (Thomas S. Grilk* with him) for the defendant.
*Richard W. Renehan (Michael S. Greco* with him) for the plaintiff.