Abraham N. Geller, J.
Plaintiff has brought this action for a declaratory judgment reinstating a policy of life insurance in the sum of $20,000. The insurance company declared the policy lapsed by reason of failure to pay the annual premium which became due on May 21,1959. About nine months after that date plaintiff tendered his check for the premium. There was an exchange of correspondence at that time. Plaintiff wrote that he had not received the premium notice in question despite notification to the company’s “office” and certain named “representatives” of a change of address. The company replied that its file did not reveal any evidence of the alleged change of address and that the premium notice mailed to plaintiff’s last-known address had been returned undelivered by the post office. It offered reinstatement subject to medical examination, a condition not acceptable to plaintiff, who had had two heart attacks, the first in 1957 and the second in 1959.
No life insurance policy may be declared lapsed or forfeited by reason of default in payment of any premium in less than one year after such default, unless the premium notice has been *816 “ mailed ” to the “ last known post-office address ” of the policyholder (Insurance Law, § 151). The notice shall be mailed at least 15 and not more than 45 days prior to due date and shall, in addition to the usual information, state' that, unless the premium be paid within the specified grace period thereafter (31 days in this case), the policy will become forfeited except as to the right to cash surrender value, paid-up policy or extended insurance. Accordingly, if a proper premium-notice was mailed to plaintiff’s last-known post-office address, defendant must prevail; if, however, the conditions set forth in the statute were not followed, plaintiff’s tender of payment within the period of one year was valid and he is entitled to reinstatement of his policy without any reservation.
Plaintiff’s evidence was directed to the question as to whether the address to which the company claimed it had mailed the 1959 notice was his “ last known post-office address.” During the course of the trial he also then urged that the company was obliged to prove mailing of the notice.
It is clear that it is incumbent upon the company to establish compliance with the statute before it can acquire this right of forfeiture. The required conditions as to (1) addressing and (2) mailing, being matters for pleading and proof by the company, (Imbrey v. Prudential Ins. Co. of America, 286 N. Y. 434; Salzman v. Prudential Ins. Co. of America, 296 N. Y. 273), defendant properly moved to amend its answer to add an affirmative defense alleging such compliance.
I. As to the “ last known post-office address ”
In 1951 on his form application for insurance, after stating his residence address and business address, plaintiff indicated that premium notices were to be sent to his business address. His business address was changed twice after that. At no time did he fill out the notice of change of address printed on the reverse side of every premium notice, attention thereto being directed on the face thereof, though, concededly, receiving all premium notices except the last one in May, 1959 and remitting payments pursuant to said received notices. In 1954, after his first change of business address, the original address set forth in an application requesting a change in the mode of payment from quarterly to annual basis was crossed out and the then current address written in. The company complied, changed its addressograph plate and thereafter mailed premium notices to said new address.
In 1956 he again changed his business address. No written notice of any kind was ever given to the company of that change. *817 Plaintiff relies on alleged visits in 1957 to the new address by his insurance broker, accompanied by a company agent, with regard to conversion of his original term insurance to a straight-life policy and on an alleged telephone conversation at the time with the broker as constituting notification to the company of the change of address.
Although notice binding on the company is not necessarily restricted to the printed change-of-address form (cf. Imbrey, supra), the policyholder takes the risk in adopting any other form of notice, since the information must be conveyed to the company through authorized channels in a manner reasonably calculated to achieve the objective.
It is not even claimed by plaintiff that he made any request during the course of the alleged visits in 1957 for a change of address on premium notices, but simply that knowledge of the new address should have alerted these representatives to the necessity of changing his address for premium purposes. Actually, the company agent had no recollection of any such visits but, even assuming they took place, they cannot in themselves, absent a specific request for a premium change-of-address, be accepted as a substitute for the required notice to the company. Indeed, plaintiff might have had two or more business addresses or might have desired for some reason that premium notices be continued to be mailed to his former address.
Plaintiff also testified that, when he received the conversion application, he called the broker on the telephone and pointed out that there was no place on the form for change of address and was assured by him that he would take care of everything. The broker has since died. Plaintiff’s partner took the stand and testified that he had listened to this conversation on an extension.
A broker is normally the agent of the insured and not of the insurer, though he may be vested with authority to receive a particular premium in connection with the transaction effected by him, being then deemed a company representative for such limited purpose. (Insurance Law, § 121; Bohlinger v. Zanger, 306 N. Y. 228.) Plaintiff has failed to present any proof tending to show that this broker had authority to bind the company with respect to notice of change of address. Moreover, in view of the circumstances here present, the court does not credit the testimony offered to supply the missing link of such notice and finds that plaintiff has failed to establish by credible evidence that he did request the change of address.
Although plaintiff had had a heart attack in February, 1957 and should have been keenly conscious of the importance of *818 paying the premiums when due and alerted to the necessity of giving the company proper notice of his new address, he apparently took no heed of the fact that premium notices received by him in May, 1957 and May, 1958 were addressed to his former address and that he had received them only because a mail forwarding request had been filed with the post office. His failure to observe and attach due significance to the fact that the 1958 notice, contrary to his alleged understanding with the broker, was still addressed to Ms former address and that the envelope bore the usual forwarding notation of the post office, is evidence of extreme neglect. Unfortunately for him, such forwarding of mail terminated pursuant to postal regulations sometime prior to the mailing of the 1959 premium, so that a premium notice addressed to his former address would not then be forwarded to his new address but would be returned undelivered to the company, as is here claimed to have happened.
Plaintiff’s neglect is surprising, since he claims to have maintained a personal file or folder in which he kept all Ms premium notices and receipts. In view of the informal manner in which he gave notice of his first change of address, it is also surprising that he did not write his new address on the 1957 conversion application. There was a space for 4 ‘ Policy changes and amendments ” and for “ special instructions ” which could reasonably have been used for this purpose, had he been concerned, as he now testifies, about the matter of change of address. The only logical inference is that he completely overlooked it, did not bother to examine or read any of the premium notices, and lost sight of the importance in his case particularly of notifying the company of a change of address and paying his premiums on time. The company is within its rights in relying on the statute and the court is obliged to enforce those rights, if established.
It must accordingly be concluded that the 1959 premium notice addressed to plaintiff’s former business address was duly addressed to Ms “ last known post-office address ”, that being the last address designated by him to the company.
II. As to the mailing
Defendant still has the burden of proving that it mailed the 1959 premium notice. It should be noted, however, that the statute is satisfied if the notice is mailed, whether it is actually received by the insured or not (Goeller v. Equitable Life Assur. Soc. of U. S., 251 App. Div. 371).
The statute (Insurance Law, § 151, subd. 3), to avoid the necessity of producing witnesses in court, provides that the affidavit of any officer, clerk or agent, or of anyone authorized by the *819 insurer to mail premium notices, stating facts showing that the required notice has been duly addressed and mailed, shall be presumptive evidence thereof. Defendant’s Exhibit Q, a mimeographed form, states that the affiant, an assistant superintendent supervising the preparation and mailing of premium notices, “ caused to be deposited in the post office ” certain notices on April 30, 1959. Obviously, it fails to state “ facts Moreover, although sworn to only four days after the alleged mailing, it contains a confusing reference to attached premium receipt forms which have been ‘ ‘ returned to the company upon non-payment ”, plaintiff’s being one of the attached group. If this is supposed to mean those notices returned undelivered by the post office, it should be revised to so state in plain language and also should state facts showing due addressing and mailing of the particular notice in question. Exhibit Q cannot be accepted as presumptive evidence and plaintiff’s motion to strike it is granted.
Defendant, however, also presented common-law proof of mailing. While the court indicated during the course of the trial, and still is of the opinion, that the company could have better and more confirmatory procedures to prove mailing than its present practice — such as, some photographic or electronic device recording all notices in the final stages of the mailing process, and retention for at least one year of envelopes returned undelivered by the post office — the court has now concluded, after reviewing the evidence in its entirety and considering it as a whole, that defendant’s proof sufficiently establishes the fact that it did mail the 1959 premium notice in question to plaintiff (cf. Wolarsky v. New York Life Ins. Co., 120 App. Div. 99, 101-102).
At best, testimony regarding the mailing of a particular letter as one of many letters mailed on a certain day long since past, while perforce admissible as a basis for the presumption, is not wholly convincing or trustworthy in the absence of some confirmatory documentary proof. There does exist in this case some confirmatory and identifying documentary evidence tending to support the proof of mailing to this plaintiff of the 1959 notice.
In the absence of direct proof as to a particular letter being deposited with the post office or in a mailbox, the rule requires proof of a course of business or office practice according to which it naturally would have been so deposited (Gardam & Son v. Batterson, 198 N. Y. 175).
The mailing by this company on one day involves in the neighborhood of 30 to 40 thousand notices. It embraces several *820 steps, with different employees manually performing some stages or supervising a machine performing other stages of the mailing process at the home office in Hartford, Connecticut.
Here we have proof of the printing of the premium notice on an addressograph machine and checking of the address, amount, etc., against individual account cards with a posting mark made by a clerk on the respective registration cards indicating that the premium notice has been checked and is ready for mailing. After the preparation of the batch of notices to be mailed on a particular day, the remainder of the procedure is performed by a mailing machine which places the notices on a track, inserts return envelopes, stamps the envelopes with a permit stamp and conveys the completed products to the mail room, from which they are taken by truck to the post office. Here we also have testimony by the supervisor of the preparation and mailing of premium notices that this 1959 notice addressed to plaintiff was returned undelivered by the post office. Hnfortunately, because of the accumulating load of returned envelopes’ on hand, the company had by this time adopted the policy of destroying returned envelopes — which, of course, would have been the best proof of mailing—An the belief that possession of the particular premium notice contained therein would by itself indicate that it had been returned undelivered and thus prove the fact of the original mailing. This particular notice was then forwarded, in accordance with the company’s usual practice, to its local New York City office. While the steps there undertaken to locate plaintiff’s latest correct address were far from satisfactory, it must be noted that this follow-up procedure is not a requirement of the law but in the nature of an added indulgence imposing no legal responsibility on the company with respect to the manner of its performance. In any event, there was testimony that the communication mailed by the .New York office to the same address as the premium notice was also returned undelivered, although, again unfortunately, the returned envelope was not kept. This premium notice was thereafter returned to the home office and kept as a permanent record of the lapsed condition of plaintiff’s policy.
While the testimony as to the course of business or office practice might be regarded as technically deficient for failure to supplement it by the further evidence of an employee whose duty it was to deposit the notices in the post office (see Gardam, supra), no actual probative value would be added by such testimony under the circumstances here shown. Viewing the proof as a whole, there is some testimony here not only of an office *821 practice from which the presumption could legally be indulged that this premium notice had been deposited with the post office, but, in addition, there are in this case special identifying features: actual written confirmation on plaintiff’s card of the preparation for mailing of this notice, which may be deemed to represent one of the steps in the multi-staged mailing process for premium notices sent by this company; possession of the premium notice by the supervisor resulting from and after its return undelivered by the post office; and the return undelivered of the follow-up letter mailed to the same address by the New York office. Moreover, here it must be clear from the facts known to us that the reason plaintiff did not receive the 1959 notice was the expiration of the postal forwarding period for change of address, and not the failure of the company to mail it.
Concerning the exhibits: Having thus reviewed the evidence in its entirety, the court deems certain exhibits previously admitted for limited purposes or merely for identification to be relevant as parts of the multi-staged mailing process and thus admissible as interrelated portions of defendant’s proof of mailing. Accordingly, Exhibits E-l, E-2, F and L have been so considered and are admitted into evidence.
The motion to strike Exhibit R is denied. The brokerage contract is admissible because plaintiff has sought to enlarge the scope of representation of this broker by means of interpretation of certain characterizing phrases used in the forms. However, the court has not taken the terms of the contract into consideration in passing on the question of the broker’s powers with relation to notice of change of address, but rather the normal rule as to brokers and the failure of plaintiff to present any proof permitting the rule to be varied in this case.
Judgment is accordingly rendered in favor of defendant dismissing the complaint on the merits, without costs to either party.