888 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MCDONOUGH CAPERTON SHEPHERD GROUP, INC., Plaintiff-Appellee,
v.
ACADEMY OF MEDICINE, CLEVELAND, Timothy M. Tuthill, M.D.,
Defendants-Appellees/Cross-Appellants,
Ohio Health Choice Plan, Defendant-Appellee,
Ideal Mutual Insurance Company, James P. Corcoran, Andrew A.
Alberti, Defendants-Appellants/Cross-Appellees.
 Nos. 89-3045, 89-3163.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1989.
 
 Before KEITH, NATHANIEL R. JONES, and RALPH B. GUY, Circuit Judges.
 RALPH B. GUY, Circuit Judge.
 
 
 1
 This appeal arises from the district court's disposition of an interpleader action filed pursuant to 28 U.S.C. Sec. 1335. The interpleader claimants who are appealing assert that the district court erred in not abstaining from exercising jurisdiction and that, alternatively, the district court erred in its apportionment of the interpleaded funds. These appellants also assert that the district court erred in dismissing their counter-claims. For the following reasons, we hold that the district court properly exercised jurisdiction over this action, and we find no error in the court's disposition of the funds concerning appellee Academy of Medicine, Cleveland. However, we reverse the district court's grant of summary judgment for Ohio Health Care Plan, and remand the case for further proceedings. We also find that all of the appellants' counterclaims should not have been dismissed, necessitating a remand for adjudication of those limited counterclaims improperly dismissed.
 
 I.
 
 2
 McDonough Caperton Shepherd Group, Inc. (McDonough Caperton), filed this interpleader action against defendants Academy of Medicine, Cleveland (Academy); Timothy M. Tuthill, M.D.; Ohio Health Choice Plan (OHCP); and Ideal Mutual Insurance Company, James P. Corcoran, and Joseph A. LaMonte (these latter three are collectively referred to as "Ideal"). McDonough Caperton deposited $1,652,575.00 in the registry of the federal district court. This interpleader fund consisted of insurance premium payments sent to McDonough Caperton by Academy and OHCP for insurance coverage which was to be provided by Ideal. Defendant Academy is a non-profit professional association which, as policy holder, offers a group health insurance plan to its employees and their families, its members and their employees and families, and widows and widowers of deceased members. In total, approximately 4,000 individuals were covered under the Academy's health insurance plans during the relevant time in question. OHCP, a preferred provider organization, is a non-profit Ohio corporation and a subsidiary of St. Vincent Charity Hospital and Health Center of Cleveland, Ohio. OHCP designs and administers health care benefit plans for its clients, which include employers of six to one hundred employees (the "Small Group Product").
 
 
 3
 McDonough Caperton is a West Virginia corporation which acts as an insurance administrator. The exact role of McDonough Caperton as to its relationship with the other parties in this action is a matter of dispute. Nevertheless, at the relevant time period, McDonough Caperton had in its possession a premium payment from Academy totaling $1,284,641.33, which represented a coverage period through June 1985. McDonough Caperton also had a payment from OHCP for $289,188.94, representing insurance coverage for December 1984 and January 1985.[1] The coverage was to be purchased from Ideal.
 
 
 4
 Ideal, however, was experiencing financial difficulties. Ideal was a mutual insurance corporation incorporated in New York. On March 2, 1984, James Corcoran, Superintendent of Insurance of the State of New York, ordered an examination of Ideal's financial condition. The report of the examination, submitted on December 5, 1984, revealed that Ideal was insolvent as of December 1983. Corcoran then directed Ideal to correct its insolvency and its minimum capital impairment within thirty days. On December 21, 1984, Ideal consented to rehabilitation proceedings. The Order of Rehabilitation, issued by the New York Supreme Court for New York County, states as follows:
 
 
 5
 It is ...
 
 
 6
 ORDERED AND ADJUDGED, that IDEAL MUTUAL INSURANCE COMPANY is deemed insolvent; and it is further
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 ORDERED, that the officers, directors, trustees, agents, servants and employees of the said IDEAL MUTUAL INSURANCE COMPANY, and all persons other than the Superintendent of Insurance, as Rehabilitator are restrained from the further transaction of business or from dealing with or disposing of assets of the said corporation; and it is further
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 ORDERED, that all policy and/or insurance obligations of IDEAL MUTUAL INSURANCE COMPANY written for policyholders outside of the State of New York are cancelled and all obligations thereunder cease and terminate as of 12:00 o'clock midnight, Eastern Standard Time, January 26, 1985; and it is further
 
 
 13
 ORDERED, that the Superintendent of Insurance, as Rehabilitator, and his successors in office, are authorized, empowered and directed to conduct the business and affairs of the said IDEAL MUTUAL INSURANCE COMPANY as he or they will deem wise and expedient under and pursuant to the direction of this Court....
 
 
 14
 Order of Rehabilitation, In re Application of Corcoran, No. 44538/84 (N.Y.Sup.Ct. for N.Y.Cnty. Dec. 26, 1984). Rehabilitation, however, did not succeed, and an order of liquidation was entered on February 7, 1985.
 
 
 15
 This time period, between December 1984 and January 1985, is when McDonough Caperton received the premium payments. Ideal claimed the money, asserting that it should be included in its liquidation estate, and the other parties asserted that their payments should be returned to them. McDonough Caperton then instituted this interpleader action in November 1985. Ideal subsequently submitted a motion to dismiss this action on the basis that the federal district court should abstain from taking jurisdiction in deference to the ongoing liquidation proceeding in the New York state court. The district court denied this motion on August 13, 1986. Ideal then filed counterclaims against McDonough Caperton. The parties filed stipulations of facts and exhibits in February 1987. The defendants also filed motions for summary judgment. In August 1988, the district court denied Dr. Tuthill's motion for summary judgment,[2] granted OHCP's motion, and granted in part and denied in part Academy's and Ideal's motions. The court at that time left unresolved several claims, including the counterclaims asserted by Ideal. On December 23, 1988, the district court granted the defendants' motion for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Subsequently, on January 31, 1989, the district court dismissed Ideal's counterclaims, and stated that this disposition constituted the entry of final judgment in the case.
 
 
 16
 Ideal has appealed (1) the district court's refusal to exercise abstention and dismiss the case; (2) the court's determination, upon summary judgment, that OHCP and Academy are entitled to a portion of the interpleaded funds; and (3) the court's dismissal of the counterclaims. Three parties have responded to Ideal's claims on appeal--McDonough Caperton, Academy, and OHCP.[3]
 
 II.
 
 17
 Ideal's first assertion on appeal is that the district court erred in refusing to abstain from exercising jurisdiction over this action. Ideal argues that the New York state court in which liquidation proceedings were simultaneously being conducted was the proper forum to adjudicate Academy's and OHCP's claims to the interpleaded fund.[4] Both Academy and OHCP assert that the district court did not err in refusing to abstain because this interpleader action did not interfere with the state proceedings and did not violate the injunction set forth in the state liquidation proceeding.
 
 
 18
 McDonough Caperton has also briefed this abstention issue, and asserts as its first argument that Ideal has waived any right to appeal by joining in the motion which asked the district court to certify the summary judgment order as a final and appealable order. McDonough Caperton argues that Ideal's consent to the entry of final judgment under 54(b) of the Federal Rules of Civil Procedure estops Ideal from seeking review of any prior orders relating to jurisdiction, abstention, or allocation of the fund since Ideal did not explicitly reserve its right to appeal. We find McDonough Caperton's argument to be without merit. It is clear from the joint motion, the brief in support, and the district court's order that the parties were requesting and were granted a final order pursuant to Rule 54(b) because the decided issues which related to the interpleader fund were separate from the reserved issues related to Ideal's counterclaims. Ideal was not consenting to the district court's decision, but merely consenting to that decision becoming a final judgment. There is no requirement in Rule 54(b) that a party explicitly has to reserve its right to appeal or it loses that right. Indeed, one of the purposes of Rule 54(b) is to allow a party to appeal a decision before the entire case reaches final adjudication.[5]
 
 
 19
 McDonough Caperton has also asserted arguments similar to those asserted by OHCP and Academy that the New York State Court injunction does not affect the district court's jurisdiction of this interpleader action. In the order of liquidation issued by the state court, the following provisions state:
 
 
 20
 ORDERED AND ADJUDGED, that notice of the making and entry of this order be given by the Superintendent, as Liquidator, ... demanding that all persons indebted to IDEAL render accounts of their indebtedness and pay any sums due to the Superintendent, as Liquidator....
 
 
 21
 .............................................................
 
 
 22
 ...................
 
 
 23
 * * *
 
 
 24
 ORDERED AND ADJUDGED, that IDEAL, its officers, directors, trustees, policyholders, agents and employees and all other persons having any property or records belonging to IDEAL, are hereby directed to assign, transfer and deliver to the Superintendent, as Liquidator, all of such property in whomsoever name the same may be....
 
 
 25
 .............................................................
 
 
 26
 ...................
 
 
 27
 * * *
 
 
 28
 ORDERED AND ADJUDGED, that the officers, directors, trustees, policyholders, agents and employees of IDEAL, and all other persons, including but not limited to claimants, plaintiffs and petitioners who have claims against IDEAL, are permanently enjoined and restrained from bringing or further prosecuting any action at law, suit in equity, special or other proceeding against the said corporation or its estate, or the Superintendent and his successors in office, as Liquidator thereof....
 
 
 29
 Ideal argues that the state court has exclusive jurisdiction over all issues related to Ideal's liquidation, and compares the state court's injunction to an automatic stay issued in a bankruptcy proceeding. The district court, however, found that the interpleader action before it involved issues distinct from those before the New York state court. The district court explained that it was not adjudicating the priorities of Ideal's creditors, but was deciding whether any of the fund, or res, in its registry belonged to Ideal. The court found that the actions of McDonough Caperton did not violate the state court injunction because, until the issues of whether McDonough Caperton, OHCP, and Academy are indebted to Ideal were decided, McDonough Caperton did not know whether the injunction applied to them.
 
 
 30
 A district court's decision not to abstain from exercising jurisdiction is reviewed only for an abuse of discretion. Kern-Tulare Water Dist. v. Bakersfield, 828 F.2d 514, 516 (9th Cir.1987), cert. denied, 108 S.Ct. 1752 (1988); United Services Automobile Ass'n v. Muir, 792 F.2d 356, 361 (3d Cir.1986), cert. denied, 479 U.S. 1031 (1987). Upon our review, we conclude that the district court did not err in refusing to dismiss this interpleader action on abstention grounds. The res before the district court was not concurrently before the New York court. Until the issue of ownership of the res was determined, the res could not properly be a part of the liquidation proceedings. We do not agree with Ideal that because it and the Liquidator asserted a claim to the res, the adjudication of their claim to ownership had to take place in the New York court.
 
 
 31
 Although bankruptcy proceedings are not totally analogous to these liquidation proceedings, the principles set forth in bankruptcy cases provide guidance for the abstention issue before us. In Dakota Livestock Co. v. Keim, 552 F.2d 1302 (8th Cir.1977), the district court had dismissed an interpleader action where the trustee in bankruptcy had moved for dismissal on the ground that the controversies about the fund were within the exclusive jurisdiction of the bankruptcy court and not within the jurisdiction of the interpleader court. Reversing the district court's dismissal of the interpleader action, the appellate court held:
 
 
 32
 [I]f a party is in the actual possession of money or property the ownership of which is disputed, his right to interplead the funds is not affected by the fact that one of the claimants is a trustee in bankruptcy who contends that the funds belong to the estate that he is administering.
 
 
 33
 Dakota Livestock, 552 F.2d at 1305. Similarly, in Shell Pipe Line Corp. v. West Texas Marketing Corp., 540 F.Supp. 1155 (S.D.Tex.1982), the district court in an interpleader action granted an injunction against certain bankruptcy claimants restraining the claimants from instituting a proceeding affecting 155,000 barrels of oil involved in the interpleader action, and stated that:
 
 
 34
 The [bankruptcy court] does not have exclusive jurisdiction over the disputed 155,000 barrels of oil for the very reason that it has yet to be determined whether or not the oil was property of the bankrupt's ... estate at the commencement of the ... bankruptcy proceedings. The question[] raised by ... this interpleader action is precisely, to whom does the oil belong? This issue will be resolved at the full trial of the merits before this Court.
 
 
 35
 Id. at 1160. In the case before us, the district court stated that any part of the res which was determined to belong to Ideal would be transferred to the New York state court for inclusion in the liquidation proceeding. We conclude that the district court correctly retained jurisdiction of this interpleader action.
 
 
 36
 Ideal also argues that Burford v. Sun Oil Co., 319 U.S. 315 (1943), applies in this case to direct a finding that the district court should have abstained. Burford abstention is premised on two independent factors, both of which must exist in order for abstention to be appropriate. Under the rule developed by the Supreme Court, Burford abstention arises (1) in order to avoid collateral attacks through federal court forums on state administrative agency decisions and (2) when the legislature of the state has centralized the administration of a regulatory scheme with judicial review in a single state court. See also Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897, 905 (6th Cir.1983); Levy v. Lewis, 635 F.2d 960 (2d Cir.1980). However, neither of the two factors enunciated in Burford applies to the case before us. This case does not involve a collateral attack on a state administrative agency decision. In contrast, this interpleader action is an invitation to the Liquidator to come in and try to obtain more assets for Ideal's estate. The rightful owner of the res on deposit with the district court has never been adjudicated before the New York state court.
 
 
 37
 The second requirement of a Burford abstention is also missing here. Although Ideal argues that state insurance company liquidation proceedings are part of a complex administrative and judicial system necessitating abstention, New York has not centralized these proceedings into a single state court which makes a de novo review. In Burford, the relationship between the Commission and the court was described as "working partners." 319 U.S. at 326. We conclude, upon our review of all of Ideal's arguments urging abstention, that the district court did not abuse its discretion in retaining jurisdiction of this proceeding.
 
 III.
 
 38
 Ideal's next assertions of error relate to the district court's apportionment of the interpleader funds.[6] The district court essentially determined that Academy and OHCP were entitled to a return of at least some of their premium payments which McDonough Caperton held. Ideal argues, in contrast, that the premium payments in the hands of McDonough Caperton were property of Ideal's estate. Since Academy's and OHCP's claims to the interpleader fund were neither factually analogous nor decided on similar grounds, we will separate Ideal's claims as to these two appellees at this point for the sake of clarity.
 
 A. Academy's Claim to the Interpleader Fund
 
 39
 Academy's primary claim to the funds at the district court level was based on an agency relationship with McDonough Caperton whose sole allegiance would be to Academy. Ideal argues that, in contrast, McDonough Caperton was its agent exclusively, and that premium payments in the hands of its agent were equivalent to being in Ideal's hands.
 
 
 40
 The relationship among the parties began in 1982 when McDonough Caperton Employee Benefits, Inc., a West Virginia corporation and wholly owned subsidiary of McDonough Caperton, presented an employee benefits proposal to Academy. This proposal was an insurance plan, and McDonough Caperton Employee Benefits, Inc., asserted that it had approached several carriers to secure the most favorable plan possible for the Academy. The recommended insurance carrier was Insurance Company of North America, and Academy accepted the proposal. The following year, McDonough Caperton Employee Benefits, Ohio, an Ohio corporation also owned by McDonough Caperton, presented a renewal proposal to Academy.[7] This proposal recommended Ideal as the insurance carrier, and Academy accepted the change. Throughout this time period, the communications and proposals between the parties referred to McDonough Caperton as the administrator. On December 13, 1984, Mike Hanley, the president of McDonough Caperton Employee Benefits, Ohio, told Grove Reitz, the executive director of Academy, that Ideal had been or was being audited by the New York Insurance Department. Reitz then told Hanley not to transfer Academy's premium to Ideal, and Hanley agreed to this request.
 
 
 41
 Ideal argues that McDonough Caperton was its agent, and asserts that this agency relationship was detailed in two agreements, the "Group Insurance Administration Agreement," and the "General Agency Agreement." These agreements termed McDonough Caperton as the "Administrator" of Ideal's insurance plans, and detailed McDonough Caperton's obligation to promptly remit any premiums received to Ideal. These agreements were executed on approximately January 1, 1983.
 
 
 42
 The district court in its opinion stated that the existence of an agency relationship is a question of fact under Ohio law and would therefore not be appropriate for determination on summary judgment in this case. The district court went on to explain that the fact of whom McDonough Caperton served as an agent was actually immaterial, since the disposition of the fund would be the same regardless of whom McDonough Caperton served as agent.
 
 
 43
 The district court found that, under both Ohio and New York law, the insureds in this case are entitled to a return on all unearned premiums. Premiums are defined as "unearned" when they are paid for risk which has not attached. Premiums are "earned" when the insurer assumes the risk of indemnity. 5 Couch on Insurance 2d (rev. ed.) Sec. 30.3. Since the Order of Rehabilitation, quoted supra, cancelled all of Ideal's policies outside of New York as of January 26, 1985, any portion of the premium payment attributable to January 26 and thereafter is "unearned." The district court determined that Academy was due a refund, from the interpleader fund, of its premium payment covering the "unearned" period. Ideal does not dispute that it has no right to the "unearned" portion, but asserts that the "unearned" along with the "earned" portion should be a part of the assets in the liquidation proceedings. Then Academy would have to receive its refund, to the extent available, from the liquidation proceedings.
 
 
 44
 The New York case most closely on point is Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338 (1954). The issue addressed by the court was whether, upon the cancellation of insurance policies due to an order of liquidation, premium payments in the broker's possession belong in total to the statutory liquidator. The court recognized the "dual agency" status of a broker who acts for both the insured and the insurer. The court explained that the broker has a fiduciary obligation toward the insurance company but this obligation extends only to those funds in which the insurance company has an interest. Id. at 232, 117 N.E.2d at 340. The court held that the proper procedure for a broker to follow when termination of coverage due to liquidation occurs is for the broker to remit to the insurer the pro rata premiums earned up to the date of termination, and to refund to the insured the unearned portion.
 
 
 45
 Six months after Bohlinger v. Zanger, a New York supreme court decided Bohlinger v. Mayville Realty Co., 135 N.Y.S.2d 865 (Sup.Ct.1954), aff'd without opinion, 285 A.D. 1045, 141 N.Y.S.2d 509 (App.Div.), appeal denied, 286 A.D. 832, 143 N.W.S.2d 627 (1955). In Mayville, the court held that an insurance agent who had collected premiums as agent for an insurance company was obliged to remit the total premiums to the company, and not just earned premiums, prior to the date of the order of liquidation. The supreme court distinguished Zanger on the basis that Zanger involved a broker with some allegiance to the insured, whereas Mayville involved an insurance agent with allegiance only to the company. In the case at bar, it is unclear whether McDonough Caperton is a broker, but it is clear that McDonough Caperton owed allegiance to Academy, which makes this case more like Zanger than Mayville. Also, to any extent that these two New York cases conflict, Zanger is precedent superior to Mayville, having been decided by New York's highest court and not since overruled.
 
 
 46
 Ohio has a statute which provides some guidance on this issue of what Academy can recover from McDonough Caperton. The statute states in its entirety:
 
 
 47
 (A) An Agent, broker, premium finance company, or any other person, other than the insured, responsible for the payment of a premium is obligated to pay any unpaid earned premium due the insurer at the time of the declaration of insolvency, as shown on the records of the insurer. The liquidator may recover from such person any part of an unearned commission of such person.
 
 
 48
 (B) An insured shall be obligated to pay any unpaid earned premium due the insurer at the time of the declaration of insolvency, as shown on the records of the insurer.
 
 
 49
 Ohio Rev.Code Ann. Sec. 3903.33 (Anderson 1989). This section applies to proceedings brought by Ohio's superintendent of insurance and also to liquidation proceedings in a reciprocal state (New York, for example) in which Ohio claimants file claims with Ohio's ancillary receiver. See Ohio Rev.Code Ann. Secs. 3933.53, 3903.56 (Anderson 1989). Section 3903.33 entitles the liquidator to recover only unpaid earned premiums. Furthermore, under this section it would be immaterial whether McDonough Caperton was an agent or a broker, since both are included, along with "any other person." This section is authority for how Ohio law would treat Ideal's claim to the premium payment which McDonough Caperton held. As the district court determined, Ideal is entitled to that portion of the premium which is "earned," or in other words, which applies to the coverage period prior to January 26, 1985, and Academy is entitled to a refund, from the interpleader fund, of the unearned portion.
 
 B. OHCP's claim to the interpleader fund
 
 50
 OHCP argued at the district court level that it was entitled to a refund of its premium because McDonough Caperton was its agent. OHCP additionally asserted that it was due a refund as the beneficiary of an express trust, and it was upon this assertion that the district court found that OHCP was entitled to a full refund of all of its premiums, including earned as well as unearned amounts.
 
 
 51
 On August 1, 1983, a "Trust Agreement" was entered into between Ideal, as settlor, and Rhode Island Hospital Trust National Bank, as trustee. OHCP was not licensed to sell insurance in Ohio; therefore, this trust was established to channel premiums and hold insurance funds for OHCP's Small Group Product. The beneficiaries of the trust were defined as the participants who created the insurance fund, or in other words, the subscribers to OHCP. Rhode Island, which had the power to appoint the administrator of the trust, then appointed Ideal. Rhode Island therefore relinquished to Ideal the responsibility for collecting premiums from participants. The administrator had the duty "to hold and disburse such monies solely for the uses and purposes set forth in" the trust. Subsequently, in the "Group Insurance Administration Agreement," executed between Ideal and McDonough Caperton, Ideal transferred to McDonough Caperton the responsibility of collecting insurance premiums from OHCP, Academy, and others. The relevant part of this agreement states:
 
 
 52
 All premiums held by the Administrator [McDonough Caperton] are to be held by the Administrator as trust funds. Pending the transmission of these premiums to the Company [Ideal], such monies shall not be used as an offset against any administration fees due or claimed to be due from the Company, and shall not be used for any other purpose.
 
 
 53
 The district court concluded that McDonough Caperton, as administrator for a trust of which OHCP was beneficiary, had a fiduciary duty to protect those premiums in the trust fund. The district court further determined that McDonough Caperton was obliged to refund the premiums in total since they must be used solely for the purposes of the trust and not to pay Ideal's creditors upon liquidation. Ideal had not been paying any claims submitted by OHCP subscribers.
 
 
 54
 Ideal argues on appeal that the district court erred in entering, on summary judgment, a finding that the OHCP premiums were held by McDonough Caperton in an express trust for OHCP. Ideal asserts that this court should either enter summary judgment in favor of Ideal or remand for a determination of whether McDonough Caperton was holding OHCP's premiums in trust for OHCP or as agent for Ideal.
 
 
 55
 Summary judgment is properly granted when there is "no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). A fact is "material" when it is capable of affecting the outcome of the suit under governing law; a dispute about a "material fact" is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
 
 
 56
 Ideal asserts that the "Group Insurance Administration Agreement," as quoted above, did not delegate to McDonough Caperton Ideal's functions as administrator of the Rhode Island Trust. In contrast, Ideal asserts, McDonough Caperton was to hold all premiums received in trust for Ideal. Ideal explains that the purpose of this agreement was to prevent McDonough Caperton from using premium payments received to offset administrative service fees due from Ideal. Upon our review of this Agreement, we find that there is a genuine dispute concerning a material fact. The Agreement does not specifically state that Ideal is transferring its administrative duties under the Rhode Island Trust to McDonough Caperton, and Ideal has offered a reasonable interpretation of the Agreement. The issue is thus a mixed question of fact and law. As such, we conclude that summary judgment was improvidently granted to OHCP on this issue, necessitating a remand to determine whether McDonough Caperton held OHCP's premiums in trust.[8]
 
 IV.
 
 57
 Ideal's final assertion on appeal is that the district court erred in dismissing Ideal's counterclaims. Ideal asserts that its counterclaims against McDonough Caperton were distinct and independent from the interpleader claims and were not affected by the district court's order disposing of the interpleader fund. The district court dismissed Ideal's counterclaims on the basis that "the counterclaims do not state claims for relief more encompassing than that available to and awarded Ideal in the disbursement of the interpleader funds." McDonough Caperton Shepherd Group, Inc. v. Academy of Medicine, Cleveland, No. C85-3507, Order (N.D.Ohio Jan. 31, 1989).
 
 
 58
 The counterclaims Ideal filed involve allegations of breach of contract, breach of fiduciary duty, conversion, and failure to turn over property to the domiciliary receiver (the Superintendent of Insurance). Counterclaims may properly be entertained in interpleader actions, and this includes permissive, as well as compulsory, counterclaims. See Libby, McNeill & Libby v. City Nat'l Bank, 592 F.2d 504 (9th Cir.1978); Provident Mut. Life Ins. Co. v. Camerlin, 534 F.Supp. 318 (W or ED.Pa.1982); Bell v. Nutmeg Airways Corp., 66 F.R.D. 1 (D.Conn.1975). McDonough Caperton brought the motion to dismiss Ideal's counterclaims, and the district court granted the motion on January 31, 1989.
 
 
 59
 Our standard of review when evaluating a motion to dismiss is to regard the factual allegations in the complaint as true. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826 (1984). This court has also said that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
 
 
 60
 From our review of Ideal's counterclaims, it appears that Ideal is asserting that McDonough Caperton wrongfully withheld premium payments due to Ideal. Since the district court, in the interpleader action, determined what premiums were due to Ideal, the interpleader action has in effect disposed of the counterclaims. Ideal also asserts that its counterclaims encompass independent damage claims concerning an alleged shortage in the interpleader fund. Ideal asserts that McDonough Caperton "shorted" the interpleader fund by $20,000. Approximately three-fourths of this shortage allegedly arises from McDonough Caperton's failure to place all of the premium payments in an interest-bearing account. The shortage therefore represents lost interest on a portion of the premium payments that McDonough Caperton held. The other approximately $5,000 arises from McDonough Caperton's alleged set-off of funds which ought to have been included in the interpleader fund. Ideal asserts that McDonough Caperton advanced premiums to Ideal in the amount of $5,000, but McDonough Caperton was later unable to collect the amounts from the policyholders. The policyholders were insureds under OHCP's "plan 4." Ideal asserts that, by written agreement, McDonough Caperton assumed full responsibility for advanced premiums, and therefore improperly used the interpleader funds as an offset.
 
 
 61
 We conclude that the district court's disposition of the interpleader fund did not address Ideal's counterclaims concerning the $20,000 shortage. We therefore find it necessary to remand this matter for a determination on the limited issues concerning the shortage.
 
 
 62
 AFFIRMED IN PART, REMANDED IN PART for further proceedings consistent with this opinion.
 
 
 
 [1]
 These two amounts, plus interest, equal the total amount McDonough Caperton deposited into the registry of the court
 
 
 [2]
 Dr. Tuthill and those he purported to represent were seeking reimbursement from the interpleaded funds for claims submitted to Ideal which Ideal never paid. The district court held, upon summary judgment, that the New York liquidation proceeding is the proper forum to adjudicate entitlements to coverage. Dr. Tuthill is not a party to this current appeal
 
 
 [3]
 Academy filed a cross-appeal, apparently intending to assert that the district court erred in not awarding them the portion of the interpleader funds which would represent their entire premium payment. Academy, however, has abandoned this cross-appeal
 
 
 [4]
 One of the defendants that we are collectively referring to as "Ideal" is James P. Corcoran, Superintendent of Insurance of the State of New York; Corcoran has also been appointed Liquidator of Ideal Mutual Insurance Company
 
 
 [5]
 The cases which McDonough Caperton cites as authority for its position are inapplicable to the present case because the cited cases do not involve entries of final judgment pursuant to Rule 54(b). See Laczay v. Ross Adhesives, 855 F.2d 351 (6th Cir.1988), cert. denied, 109 S.Ct. 1125 (1989) (stipulation of dismissal with prejudice); Cohen v. Virginia Electric & Power Co., 788 F.2d 247 (4th Cir.1986) (consent judgment reached between the parties); Coughlin v. Regan, 768 F.2d 468 (1st Cir.1985) (judgment entered as a result of an agreement reached between the parties)
 
 
 [6]
 McDonough Caperton takes no position on this issue
 
 
 [7]
 Apparently, McDonough Caperton Employee Benefits, Ohio, later became known as McDonough Caperton Employee Benefits Agency, Inc. (MCEB Agency). This corporation was formed to comply with Ohio law which requires insurance for Ohioans to be placed through an Ohio incorporated agency owned by an Ohio resident. This corporation had no operational function and was merely a conduit for premiums
 
 
 [8]
 We express no opinion on what the ultimate decision should be on this issue, but we do note that if the district court determines that McDonough Caperton did not hold the premiums in trust for OHCP and OHCP is entitled to only a refund of its unearned premiums, this amount will be a small percentage of the premiums since termination occurred on January 26 and McDonough Caperton held December's and January's premiums